UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Docket no. 2:18-cr-00054-GZS |
| GARY BOSHOFF, | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO SUPPRESS**

Before the Court is Defendant's Motion to Suppress (ECF No. 99). The Court held an evidentiary hearing on the Motion on June 26, 2019. For the reasons explained herein, the Court now DENIES the Motion.

## I. FACTUAL FINDINGS

The following material facts are drawn from the preponderance of the evidence based upon the Court's consideration of the testimony of Special Agent David Fife, Detective Frank Stepnick, and Elizabeth Anderson, as well as all of the exhibits admitted at the hearing on Defendant's Motion:

In 2016, the Maine Computer Crimes Unit, which included federal and state law enforcement agents, were investigating the sharing of child pornography on BitTorrent, a peer-to-peer network. By September 30, 2016, their investigation focused on child pornography emanating from an IP address assigned to a residence in Topsham, Maine. As a result, on that day, they obtained a federal search warrant for computer equipment located at this residence, a split-level, single-family home.

A team of agents and officers executed the search warrant on the morning of October 3, 2016. The team consisted of approximately eight or nine law enforcement officers from four different agencies.[1] They arrived in four or five vehicles. At approximately 6:30 AM, Special Agent Fife, dressed in khaki pants, a ballistic vest, and a clearly marked "Homeland Security Investigations" jacket, did a knock-and-announce. Elizabeth Anderson, the adult daughter of Defendant Gary Boshoff, opened the door. At the time, she was the only adult present at the residence. Anderson lived at the residence with her parents and her infant daughter, who was then asleep in a lower-level bedroom of the residence. Anderson recalled giving the officers permission to enter the home and being shown a copy of the search warrant. As part of the initial securing of the house, some of the agents and officers did have firearms drawn. However, the agents holstered any firearms once they completed the clearing process and confirmed that only Anderson and her daughter were present in the residence. Agent Fife testified that effort was taken to clear the house in a "low-key" manner given the presence of a sleeping baby.

Once the house was secure, Anderson assisted the agents and officers in locating computer equipment used by Boshoff. She recalled feeling nervous and asking for permission to move about the residence on one or more occasions while the search was being conducted. However, any request she made was granted and Anderson was permitted to step outside the house during the search. She was also able to use her phone.

During this initial stage of the execution of the search warrant, Boshoff was at Bath Iron Works, where he worked as a naval officer. Anderson recalled at least one police officer, who knew Boshoff's commanding officer, making some phone calls in an attempt to get Boshoff to return to the residence. While no one directed her to call her father, Anderson did call him at least

---

[1] The law enforcement agencies participating included Homeland Security Investigations ("HSI"), Maine State Police, the United States Naval Criminal Investigative Service ("NCIS"), and the local Topsham Police Department.

ten times without success. She finally reached Boshoff around 8:00 AM, explained what was happening at the house, and asked him to come home. Boshoff arrived home in response to this call at approximately 8:30 AM.

Shortly after Boshoff arrived inside the residence, Agent Fife and Detective Stepnick proceeded to interview Boshoff. While the interview began in the landing area of the house between the living room and the kitchen, it ultimately took place in various locations within the upper level of the house. Stepnick made an audio recording of that interview. The recording begins shortly after Boshoff enters the home and ends approximately forty minutes later when Boshoff is handcuffed and placed in a police vehicle. (See Gov't Exs. 1 (audio recording) & 2 (transcript excerpt of audio recording)).

Upon his initial encounter with Boshoff, Fife told him that they had "found child pornography" and gave Boshoff the option of talking "a little more in depth" in a location of Boshoff's choosing. (Gov't Ex. 2 at 1.) By default, the interview proceeded inside the upper level of the house with Fife asking Boshoff questions about his use of BitTorrent. Stepnick joined in this questioning a few minutes later. In response to these questions, Boshoff acknowledged having viewed child pornography on his computer, but denied actively sharing child pornography. During this initial eleven minutes of the recorded interview, Boshoff was not physically restrained. He was allowed to stand and move about his home. However, agents did accompany him as he moved to different rooms in his home out of concern for the safety of the agents participating in the search. Specifically, approximately ten minutes after arriving home and encountering the search team, Boshoff asked to get some water from the kitchen. While Boshoff was allowed to get water, officers accompanied him noting that there were knives in the kitchen.

3

Approximately eleven minutes in to the audio recording, Fife tells Boshoff that he is planning to put Boshoff under arrest for possession of child pornography.[2] (Gov't Ex. 2 at 10.) In the following ten minutes, Boshoff continues to engage in conversation with Fife and Stepnick asking and answering questions as well as mulling the logistics and impact of his arrest. Then, approximately nineteen minutes into the audio recording, Boshoff asked to speak with his daughter, who was then outside.

Detective Stepnick alerted Anderson to Boshoff's request. At the moment Anderson re-entered the house, Boshoff was actually on the phone contacting his command staff to update them on his status. Anderson proceeded to ask questions to Stepnick and then Boshoff and both responded to her various inquiries. Stepnick remained present for the duration of Anderson's conversation with Boshoff and kept his audio recorder running.[3] By that time, Stepnick understood that Boshoff was being placed under arrest, but he did not know whether Boshoff had been administered any *Miranda* warning. In any event, Stepnick did not direct Anderson to pose questions to Boshoff, nor did he intend to ask any questions of Boshoff at that point.

The questions Anderson posed to her father were prompted by her own desire for answers. In part, Anderson directly asked Boshoff: "But, like you were intentionally downloading child pornography?" To which Boshoff responded: "Yes. Yeah." (Gov't Ex. 2 at 19 & Gov't Ex. 1.) Anderson recalled Stepnick standing nearby when she directed questions at her father, but was unaware that the conversation was being recorded. All told, this father-daughter dialogue lasted

---

[2] At the hearing, the Government conceded that it would not seek to introduce any statements Boshoff made in response to officer questions after this point in time.

[3] Fife was not present for these interactions between Anderson, Boshoff, and Stepnick. However, routine practice required that Boshoff be supervised by a law enforcement officer given his impending arrest. The Court additionally notes that neither Anderson, nor Boshoff requested an opportunity to speak to each other privately.

4

less than five minutes. Thereafter, Boshoff was allowed to change his clothes and briefly spoke with his wife, who was out of state, via cell phone.

The recording ends at the moment Boshoff is placed in handcuffs and loaded into a police vehicle, which occurs less than 40 minutes after the recording began. Throughout the recording, Boshoff retained a compliant and respectful demeanor. For their part, Fife and Stepnick maintained a similar respectful, conversational tone.

**II. DISCUSSION**

Defendant Gary Boshoff is presently charged in a one-count Indictment with possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2) & 2256(8)(A). Via the pending motion, Defendant seeks to suppress his statements that were recorded during the execution of the search warrant on October 3, 2016. He asserts those statements were the product of custodial interrogation without a *Miranda* warning.

Absent a proper *Miranda* warning, any statements that the government obtains through "custodial interrogation" must be suppressed. Illinois v. Perkins, 496 U.S. 292, 296 (1990). A "custodial" situation arises where a defendant has been formally arrested or has experienced "restraint on freedom of movement of the degree associated with a formal arrest." United States v. Mittel-Carey, 493 F.3d 36, 39 (1st Cir. 2007) (quoting Stansbury v. California, 511 U.S. 318, 322 (1994)). "Interrogation," on the other hand, involves either "express questioning" or its "functional equivalent" meaning "words or actions … that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980). This inquiry turns on "an objective assessment as to whether the police statements and conduct

would be perceived as interrogation by a reasonable person in the same circumstances." United States v. Taylor, 985 F.2d 3, 7 (1st Cir. 1993).

In light of the Government's concession that it would not seek to admit any answers Boshoff gave to an officer question after he was told he would be placed under arrest (which was approximately eleven minutes after he arrived home), the Court considers Defendant's request to suppress these statements moot. Two issues remain for ruling: (1) whether Boshoff was subject to custodial interrogation during the first ten minutes captured on the Government's audio recording, and (2) whether Boshoff's admissions in response to Anderson's questions were the product of a police interrogation.

As to the first ten minutes of questioning, the Court must consider "the totality of the circumstances" and ask "whether in light of the circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." Mittel-Carey, 493 F.3d 36, 39 (internal quotations and citations omitted). The First Circuit has identified at least four non-exhaustive factors for courts to consider when determining whether a defendant was in custody: "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." Id. (quoting United States v. Masse, 816 F.2d 805, 809 (1st Cir. 1987) & United States v. Streifel, 781 F.2d 953, 961 n. 13 (1st Cir. 1986)). Here, all four factors support a finding that Boshoff was not in custody at the moment he arrived at this home.

First, given that the interview was conducted in Boshoff's home, that Boshoff came to the house voluntarily knowing that officers were there, and that Agent Fife gave Boshoff the option of choosing where to talk, the Court finds that the surroundings were both familiar and neutral.

See id. at 40 ("[A]n interrogation in a defendant's residence, without more, certainly weighs against a finding of custody. . . ."). Turning to the number of officers, there were approximately eight officers at the home when Boshoff arrived. However, only two officers participated in the interview. Boshoff was allowed to stand and move around his house during the interview. No physical restraint was placed upon him. See, e.g., United States v. Hinkley, 803 F.3d 85, 90 (1st Cir. 2015) (finding defendant was not "in custody at the outset of the interview" when he had "arrived at the police station voluntarily and was never restrained"). To the extent Defendant asserts that the level of supervision provided when he asked for water amounted to a restraint, the Court concludes that this supervision was reasonable and did not "intrude[d] upon any intimate or private activity." United States v. Hughes, 640 F.3d 428, 436 (1st Cir. 2011)("While escorting a suspect throughout his home may have some bearing on the custody inquiry . . . , there is no evidence that the troopers followed the defendant so closely as to intrude upon any intimate moment or private activity.")

Finally, the short ten-minute duration of the interrogation and the overall tone and character of the questioning all support finding that Boshoff was not in custody prior to Agent Fife affirmatively telling Boshoff that he planned to take him "down to Portland" and put him "under arrest." (Gov't Ex. 2 at 10.) Thus, on the record presented, the Court concludes that a reasonable person in Boshoff's circumstances would have felt he was not yet in custody and had the option of terminating the interview prior to Fife's arrest announcement.

Turning to Boshoff's recorded responses to Anderson's questions, the Court must determine whether Anderson's questions were the functional equivalent of police interrogation. The Court notes at the outset that Boshoff asked to speak with Anderson and there is no evidence in the record that Detective Stepnick's decision to facilitate Boshoff's request was "the kind of

7

psychological ploy that properly could be treated as the functional equivalent of interrogation." Arizona v. Mauro, 481 U.S. 520, 527 (1987). While the record does not support finding that Stepnick would have any basis for thinking that Boshoff would make incriminating statements to Anderson, "the mere fact that a police officer may be aware that there is a possibility that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation." United States v. Taylor, 985 F.2d 3, 7–8 (1st Cir. 1993) (internal citations and quotations omitted). Considering the totality of the record objectively, the Court concludes that Boshoff's volunteered responses to his daughter's questions cannot be categorized as the product of police interrogation or its functional equivalent. See United States v. Kimbrough, 477 F.3d 144, 152 (4th Cir. 2007) (refusing to suppress statements defendant made in response to questions posed by his mother during a residence search); United States v. Wiggins, No. 12-CR-6114L, 2013 WL 1645180, at *9 (W.D.N.Y. Apr. 16, 2013) ("Numerous courts have held that allowing a defendant to converse with his family or other third persons does not amount to interrogation."), report and recommendation adopted, No. 12-CR-6114L, 2013 WL 2553971 (W.D.N.Y. June 10, 2013).

In sum, the Court declines to suppress any of the October 3, 2016 statements that the Government has indicated it would seek to introduce.

## III. CONCLUSION

Therefore, Defendant's Motion to Suppress (ECF No. 99) is hereby DENIED.

SO ORDERED.

    /s/ George Z. Singal
    United States District Judge

Dated this 17th day of July, 2019.

8